**UNITED STATES DISTRICT
DISTRICT OF COLUMBIA**

JOHN DOE 1 and
JOHN DOE 2,

    *Plaintiffs*,

    *v.*

KASHYAP P. PATEL
in his official capacity as
Director of the Federal Bureau of
Investigation;

FEDERAL BUREAU OF INVESTIGATION;

PAMELA J. BONDI,
in her official capacity as Attorney General
of the United States;

and

U.S. DEPARTMENT OF JUSTICE,

    *Defendants*.

Civil Action No. 1:26-cv-959

---

**PLAINTIFFS' MOTION FOR LEAVE TO PROCEED
UNDER PSEUDONYMS AND MEMORANDUM IN SUPPORT**

Plaintiffs are two FBI Special Agents who were fired from their employment at the Federal Bureau of Investigation ("FBI") on October 31, 2025, and November 4, 2025. As the contemporaneously filed Complaint sets forth, Plaintiffs were unlawfully terminated in retaliation for perceived lack of political support for President Trump, and based solely on their assignment to Arctic Frost, an investigation concerning efforts to illegally overturn the results of the 2020 Presidential election. Plaintiffs' long experience as FBI Special Agents included highly sensitive counterintelligence, public corruption, and international financial fraud matters, and their anonymity to the public allowed them to fulfill their law enforcement duties effectively and safely.

1

Moreover, Defendants' actions and public statements in connection with Plaintiffs' terminations have fueled antagonism toward Plaintiffs. Publication of Plaintiffs' identities in this case would subject them and their families to an immediate risk of doxing, SWATting, harassment, and physical harm. Such exposure would also directly interfere with their ability to resume their sensitive duties if reinstated to their positions at the FBI, as requested in the Complaint, or to pursue their profession as law enforcement officers outside the FBI.

> As explained by the FBI:

> Doxing refers to the internet-based practice of gathering someone's personally identifiable information or an organization's sensitive information from open source or compromised material and publishing it online for malicious purposes. In many instances, these nefarious actors (referred to as doxers) compile sensitive information from a wide range of publicly available data sources, including personal and professional accounts, to develop invasive profiles of their target(s). These profiles are then published online with the intent to harm, harass, or intimidate.[1]

> "SWATting," in turn, "entails making a hoax 9-1-1 call in an attempt to draw a response from law enforcement . . . typically a SWAT Team, to the target's residence," often with the intent to harm, humiliate, or intimidate the target directly or through family members.[2] SWATters are known to use technology that gives the appearance a call originated from the target's phone.[3]

> Because of the high risk of harm to Plaintiffs and their families that would result from using their names in this litigation, Plaintiffs respectfully request that the Court permit them to proceed pseudonymously in this matter.

---

[1] Fed. Bureau of Investigation, Urgent Safety Message from FBI, https://socxfbi.org/SFSA/SFSA/Featured-Articles/Urgent-Safety-Message-from-FBI.aspx (last accessed March 18, 2026).

[2] *Id.*

[3] *Id.*

**LEGAL STANDARDS**

Rule 10(a) of the Federal Rules of Civil Procedure and Local Civil Rule 5.1(c)(1) establish the general rule that a complaint must state the names of all parties, consistent with "the general public interest in the openness of governmental processes, and, more specifically, from the tradition of open judicial proceedings." *In re Sealed Case*, 931 F.3d 92, 96 (D.C. Cir. 2019) (quotation marks and citation omitted). Importantly, however, "it is within the discretion of the district court to grant the 'rare dispensation' of anonymity" in certain cases. *United States v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995) (quoting *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993)). The court has "a judicial duty to inquire into the circumstances of particular cases to determine whether the dispensation is warranted," and should "take into account the risk of unfairness to the opposing party, as well as the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Id.* (internal quotation marks and citations omitted).

"The moving party bears the weighty burden of both demonstrating a concrete need for such secrecy, and identifying the consequences that would likely befall it if forced to proceed in its own name." *In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020) (internal citation omitted). Once a "legitimate interest in anonymity" is established, the court must balance it "against countervailing interests in full disclosure." *Id.* (internal quotation marks and citations omitted). Courts in this district do so through a "flexible and fact driven" balancing test assessing "five non-exhaustive factors":

1. Whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature;

2. Whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;

3. The ages of the persons whose privacy interests are sought to be protected;

4. Whether the action is against a governmental or private party; and, relatedly,

5. The risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Id*. at 326-27 (internal citation omitted).

## ARGUMENT

The Court should grant Plaintiffs' request to proceed under pseudonyms. Plaintiffs possess a strong legitimate interest in proceeding pseudonymously, and this District's five-factor balancing test amply supports Plaintiffs' proceeding pseudonymously in this case.

### I.     Plaintiffs Possess a Legitimate Interest in Pseudonymous Filing

Plaintiffs have a strong legitimate interest in proceeding pseudonymously. The D.C. Circuit has repeatedly observed that in general, FBI agents have an ongoing interest in maintaining their anonymity. *See Lesar v. U.S. Dept. of Just.*, 636 F.2d 472, 487 & n.88 (D.C. Cir. 1980) ("As several courts have recognized, [FBI] agents have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives." (collecting cases)); *Baez v. U.S. Dep't of Just.*, 647 F.2d 1328, 1339 (D.C. Cir. 1980) (affirming reasoning that FBI agents' names could be protected where they allege potential harassment from "conduct[ing] official inquiries into violations of various criminal statutes and in national security cases"). Although the scope of a privacy interest "will always be dependent on the context in which it has been asserted," withholding agents' names is appropriate where disclosure would "put the agents in danger." *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 581–82 (D.C. Cir. 1996).

FBI agents' privacy interests in their names have become more acute in recent years as

4

doxing and SWATting of law enforcement officers has become increasingly commonplace. The Department of Justice, the Department of Homeland Security (DHS), and the FBI have each identified doxing and SWATting as a serious threat to the safety of federal officers and their families. The FBI's Security Division has issued a memorandum stating that "[s]everal current and former FBI employees have been subjected to doxing and/or SWATting incidents over the past year" and encouraging current and former FBI agents to take "proactive measures" to protect themselves and their families from these dangerous practices.[4] On October 9, 2025, DHS issued a press release identifying "escalating threats" against law enforcement officers and their families.[5] This followed a September 26, 2025 federal indictment of three people who followed a federal law enforcement officer home while livestreaming their progress and the officer's home address on Instagram.[6]

As former federal law enforcement officers whose unlawful terminations were accompanied by extensive and incendiary commentary by Defendant Patel, elected officials, and others, Plaintiffs and their families face a real and present threat of danger should their names be publicized in this case. First, Plaintiffs face a threat on account of their case work while they were employed as FBI agents. As FBI Special Agents, Plaintiffs investigated criminal violations committed by individuals and organizations capable of sophisticated offenses. Second, Plaintiffs face the threat of harm from individuals otherwise unknown to Plaintiffs who may seek to target

---

[4] *Id.*

[5] Press Release, Dep't of Homeland Sec., DHS Condemns Dangerous Doxxing and Escalating Threats Against Federal Law Enforcement Officers (Oct. 9, 2025), https://www.dhs.gov/news/2025/10/09/dhs-condemns-dangerous-doxxing-and-escalating-threats-against-federal-law (last accessed March 18, 2026).

[6] Press Release, U.S. Atty's Off. Cent. Dist. of Cal., Federal Grand Jury Charges Three Women with Following ICE Agent Home from Work and Livestreaming His Home Address on Instagram (Sept. 26, 2025), https://www.justice.gov/usao-cdca/pr/federal-grand-jury-charges-three-women-following-ice-agent-home-work-and-livestreaming (last accessed March 18, 2026).

them based on the unsupported, incendiary characterizations of Plaintiffs' service documented in the Complaint. Rhetoric directed against Arctic Frost agents has been particularly provocative and, alarmingly, is often authored by elected officials or other government leaders.

For example, in a September 16, 2025 press release, Senator Chuck Grassley declared that "Arctic Frost wasn't just a case to politically investigate Trump. It was the vehicle by which partisan FBI agents and Department of Justice prosecutors could achieve their partisan ends and improperly investigate the entire Republican political apparatus." [7] On October 7, 2025, President Trump exclaimed on his social media account, "Wow! Jack Smith and the Biden DOJ spied on Republican Senators and a least one Republican Congressman. This is really bad 'stuff.' They tried to take down the Republican Party, and got caught!!!"[8] Defendant Patel and elected officials have variously described Arctic Frost agents as "corrupt actors,"[9] guilty of "weaponization,"[10] part of a "political witch hunt,"[11] and "no better than the insurrectionists in Portland, Minnesota, Los

---

[7] Press Release, U.S. Comm. on the S. Judiciary, Grassley Opens Senate Judiciary FBI Oversight Hearing, Releases Additional Records Demonstrating Political Weaponization and Misconduct at Biden FBI (Sept. 16, 2025), https://www.judiciary.senate.gov/press/rep/releases/grassley-opens-senate-judiciary-fbi-oversight-hearing-releases-additional-records-demonstrating-political-weaponization-and-misconduct-at-biden-fbi (last accessed March 18, 2026).

[8] Donald J. Trump (@realDonaldTrump), TRUTH SOCIAL (Oct. 7, 2025 at 22:02 ET), https://truthsocial.com/@realDonaldTrump/posts/115336083572186272 (last accessed March 18, 2026).

[9] FBI Director Kash Patel (@FBIDirectorKash), X (Jan. 12, 2026 at 20:44 ET), https://x.com/FBIDirectorKash/status/2010890567845040481?utm_ (last accessed March 18, 2026).

[10] FBI Director Kash Patel (@FBIDirectorKash), X (Oct. 23, 2025 at 16:50 ET), https://x.com/FBIDirectorKash/status/1981463216367779957?s=20 (last accessed March 18, 2026).

[11] *Sen. Blackburn's office says she plans to sue after phone records subpoenaed*, WBIR (Nov. 12, 2025, at 15:33 EST), https://www.wbir.com/article/sports/locked-on/lo-tennessee/sen-blackburns-office-plans-to-sue-phone-records-subpoenaed/51-3a7e9cf7-fc43-4258-9397-577e464d30cb (last accessed March 18, 2026).

6

Angeles, etc."[12]

Significantly, this rhetoric by DOJ and elected officials appears to have emboldened certain members of the public to consider their own retaliation against Plaintiffs and other Arctic Frost agents, as reflected in troubling comments posted on social media websites. These posts often imply that simply being fired was insufficient punishment for the Arctic Frost agents. For example, in response to a social media post dated January 23, 2026, which described Patel's recent firing of FBI agents, X user "@lecoder" wrote, "[FBI Agents who worked on investigations into Trump] need more than fired. They belong in gitmo strapped to car batteries for the rest of their miserable lives."[13] And in response to an article about a fired Arctic Frost agent posted on November 3, 2025, X user "@MattBro40859075" posted, "Regrettably, it's not enough to just be removed. We demand retribution & want to see them indicted in a grand RICO conspiracy & treason against the USA. We need a public spectacle for their very public varied executions."[14] Similarly, in response to a social media post describing President Trump's own posting about the fired Arctic Frost agents, X user "@Szmity69" stated, "Firing them lets them get away with their treason and crimes. We need to hold them accountable at the highest level in the Public Square to set the example so we can stop this BS."[15]

Indeed, due to the release of unredacted Arctic Frost records containing his name, John Doe 1 has already been the subject of threatening social media posts. *See* Ex. A (filed under seal).

---

[12] Donald Trump (@realDonaldTrump), TRUTH SOCIAL (Jan. 12, 2026, at 16:07 ET), https://truthsocial.com/@realDonaldTrump/posts/115884164936451552 (last accessed March 18, 2026).

[13] lecoder (@lecoder), X (Jan. 23, 2026 at 20:40 ET), https://x.com/lecoder/status/2014875932771733918 (last accessed March 18, 2026).

[14] Matt Brown (@MattBro40859075), X (Nov. 3, 2025 at 15:23 ET), https://x.com/MattBro40859075/status/1985442792425078973 (last accessed March 18, 2026).

[15] Andrew Szmit (@Szmity69), X (Jan. 13, 2026 at 20:26 ET) https://x.com/Szmity69/status/2011248564585074805 (last accessed March 18, 2026).

And as alleged in the Complaint, even the limited public reporting about John Doe 1's firing has damaged his reputation and employment prospects. If Plaintiffs' names are revealed in this lawsuit, that publicization and the accompanying attention it will draw will pose a new threat to Plaintiffs—not simply harming their employment prospects, but rather placing their actual physical safety and mental health newly at risk.

But Plaintiffs also face a substantial risk of occupational harm should their names be made public in this litigation. Plaintiffs' anonymity is key to successfully performing their law enforcement duties. While Plaintiffs' names have been disclosed in limited circumstances in the course of their FBI duties, and while John Doe 1's name appeared unredacted in some publicly released Arctic Frost documents, in comparison to many other terminated DOJ and FBI employees, neither Plaintiff's identity has been widely and prominently publicized. Should their names be revealed as Plaintiffs in this litigation, such disclosure would further threaten Plaintiffs' ability to return to any position requiring them to apply their extensive skill and experience in covert operations, whether in the FBI or at another law enforcement agency.

## II.    The Five-Factor Balancing Test Weighs in Favor of Pseudonymous Filing

The strong legitimate interests of Plaintiffs withstand balancing against any "countervailing interests," with each of this Circuit's five relevant factors for pseudonymous filing supporting Plaintiffs' request.

The first and second factors consider the need for privacy to avoid harm. Here, "the justification asserted by" Plaintiffs is not "merely to avoid the annoyance and criticism that may attend any litigation." *In re Sealed Case*, 971 F.3d at 326. While this case does not involve a "highly personal" matter like sexual assault or medical disability, Plaintiffs' request reflects a genuine need "to preserve privacy" and lessen a "risk of retaliatory physical or mental harm" to Plaintiffs, and

"even more critically, to innocent non-parties." *Id*. As FBI agents who investigated serious criminal offenses, Plaintiffs had a cognizable privacy interest in their names even before the unlawful terminations. Given the attention Plaintiffs' terminations received, as well as the evidence that the terminations and accompanying rhetoric have inflamed animus against Plaintiffs, there is a heightened and continuous risk of danger to Plaintiffs and their families. Indeed, the online harassment directed at Arctic Frost agents has included at least one threat against agents' families. *See* Ex. A (filed under seal); *Ellison v. Islamic Republic of Iran*, No. CV 25-2250 (UNA), 2025 WL 2049266, at *2 (D.D.C. July 22, 2025) (considering second factor and noting the "innocent non-parties in this case are, at a minimum, Plaintiffs' family members, who are equally at risk of the abovementioned harm"); *see also Doe v. Cabrera*, 307 F.R.D. 1, 6–7 (D.D.C. 2014) (explaining that including plaintiff's name in court filings would make it "indefinitely available to the public," which "especially in the Internet age" poses a danger of ongoing and "unnecessary" harassment). In addition, Plaintiffs' ability to pursue their law enforcement profession would be seriously harmed by a lack of pseudonymity in this case. By seeking to proceed pseudonymously, Plaintiffs seek to mitigate the harm caused by Defendants' unlawful actions against them.

The third factor considers the ages of the requesting parties. This factor can favor pseudonymity where adult plaintiffs "share common privacy interests with their minor child due to their intractably linked relationship." *J. v. District of Columbia*, No. 1:23-cv-1279, ECF No. 3 (Mem. Op.) at 4 (D.D.C. May 9, 2023) (cleaned up) (internal quotation marks omitted). Although Plaintiffs are adults, and no minors are parties to this case, John Doe 1 has young children who share his last name. By permitting Plaintiffs to proceed pseudonymously, the Court would decrease the risk of retaliatory harassment and violence against John Doe 1's children.

The fourth factor considers the nature of the action. Plaintiffs seek individualized relief

9

against federal government agencies and officials, favoring pseudonymity. Where "a plaintiff challenges the government or government activity, courts are more like[ly] to permit plaintiffs to proceed under a pseudonym than" where the defendant is not "an individual . . . accused publicly of wrongdoing." *Nat'l Ass'n of Waterfront Emps v. Chao*, 587 F. Supp. 2d 90, 99 n.9 (D.D.C. 2008) (internal quotation marks and citations omitted). This is "because governmental bodies do not share the concerns about 'reputation' that private individuals have when they are publicly charged with wrongdoing." *Doe v. De Amigos, LLC*, No. CV 11-1755 (ABJ), 2012 WL 13047579, at *3 (D.D.C. Apr. 30, 2012) (internal citations omitted). Furthermore, "whatever reputational harm comes to Defendant[s] from these allegations is the same regardless of whether Plaintiff[s] use[] [their] actual name[s] or [John] Doe; the allegations are the same no matter who brings them." *Doe v. Darden Restaurants, Inc.*, 736 F. Supp. 3d 297, 302 (D. Md. 2024). Pseudonymity is also more appropriate where, as here, "plaintiffs seek only individualized relief" as opposed to "programmatic relief" that "intensifie[s]" the public interest in their case. *Does 1-158 v. Rubio*, No. CV 25-3032, 2025 WL 2709775, at *2 (D.D.C. Sept. 23, 2025).

Finally, the fifth factor considers unfairness to the other party. In this matter, there is no risk of unfairness to Defendants, and Defendants will suffer no prejudice if Plaintiffs are allowed to proceed under pseudonyms. Defendants know the Plaintiffs' identities: Defendants only recently terminated Plaintiffs from their employment with the FBI. Moreover, Plaintiffs will submit their names under seal for Defendants' review. Accordingly, the fifth factor is not even implicated in this matter. *See In re Sealed Case*, 971 F.3d at 326 n.1 (explaining that this factor is "not implicated" when defendant knows plaintiff's identity).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court file the attached Complaint and permit Plaintiffs to proceed pseudonymously to protect against needless retaliation and occupational harm.

Date: March 19, 2026

Respectfully Submitted,

*/s/ Elizabeth Tulis*
Elizabeth Tulis (DDC No. NY0703/
D.C. Bar No. 90042452)
Brittany Hanke*
PERRY LAW
445 Park Avenue, 7th Floor
New York, NY 10022
Tel: (212) 213-3070
Fax: (646) 849-9609
etulis@danyaperrylaw.com
bhanke@danyaperrylaw.com

*/s/ Margaret Donovan*
Margaret Donovan (DDC No. CT0026)
KOSKOFF KOSKOFF & BIEDER, PC
3560 Fairfield Ave., Suite 501
Bridgeport, CT 06604
Tel: (203) 336-4421
Fax: (203) 368-3244
mdonovan@koskoff.com

* *pro hac vice* forthcoming

*Attorneys for Plaintiffs*